19230

Mary S. WILSON, Respondent, v. Frank L. McABEE, Appellant

(182 S. E. (2d) 313)

*Messrs. Sinkler, Gibbs, Simons & Guerard,* of Charleston, *for Appellant,*

*Messrs. Holmes & Thomson,* of Charleston, *for Respondent,*

June 8, 1971.

LEWIS, Justice.

This proceeding was brought by Mary S. Wilson, the landlord, against Frank L. McAbee, as tenant, to obtain possession of premises owned by the landlord at the corner of King and Tradd Streets, in the City of Charleston, South Carolina, which the tenant had occupied since November 1, 1963. The basic issue on the trial of the case concerned the nature and term of the tenancy under which the tenant occupied the premises. The landlord contended that it was a tenancy from month to month and therefore terminable at anytime upon proper notice which, admittedly, had been given. The tenant on the other hand alleged that he occupied the premises under an unexpired five year lease, at a rental of $150.00 per month.

Upon demand of the tenant, a jury was impaneled to determine the factual issues. After the testimony was completed, the trial judge concluded, pursuant to motion, that the evidence showed, as a matter of law, that the tenancy was from month to month and directed a verdict in favor of the landlord for the relief sought.

The question to be decided in this appeal is whether the evidence presented a factual issue as to the nature of the tenancy under which the tenant occupied the premises. If it

did, the trial judge was in error in determining the question as a matter of law.

A drug store had been operated on the premises in question for a number of years prior to October 31, 1963. The operator of the business desired to sell, and negotiations began in May 1963 between the tenant, the then occupant, and the landlord looking toward the purchase of the existing drug store business by the tenant and its continued operation at the same location under a lease from the landlord. The purchase by the tenant did not materialize, and the business was sold to someone else who moved it to another location, vacating the premises about October 31, 1963.

The tenant had, however, agreeably with the landlord, made financial arrangements to open a new drug store on the premises. These arrangements included a loan on his residence in the amount of $21,500.00. The tenant went into possession on November 1, 1963 but, in view of the condition in which the prior occupant had unexpectedly left the premises, considerable repairs and improvements had to be made before he could open for business. While the testimony is conflicting in some respects in that regard, it is inferable that these repairs and improvements were made by the landlord, with the tenant to reimburse her therefor under some arrangement, the terms of which were in disagreement. In view of the extensive financial commitments of the tenant, and the negotiations by him with the landlord, including plans for the eventual purchase of the premises, it is also inferable that the parties contemplated that the tenant would be granted a lease of approximately five years or more, although no lease had been executed when he went into possession.

The loan on the tenant's home was not completed until December 3, 1963. On that date, he went to the office of his attorney for the purpose of executing the mortgage and also instruments in connection with his transaction with the landlord. The loan papers were executed and he was then pre-

sented with a proposed written lease and an additional agreement, the latter providing for the participation by the landlord in the net profits of the tenant's drug store business. While the testimony is conflicting, it is inferable that the proposed participation by the landlord in the net profits of the business was to reimburse her for the repairs and improvements made on the building.

Admittedly, the same attorney represented both the tenant and the landlord in all of the lease negotiations and transactions.

The proposed lease and additional agreement were separate instruments, and had already been signed by the landlord when presentel to the tenant for his signature. The lease was duly executed by the tenant and retained in the possession of the attorney who represented both parties. The lease was for a term of five years, beginning November 1, 1963, the date the tenant went into possession, and ending on October 31, 1968, at a rental of $150.00 per month, with the right of the tenant, upon 90 days notice, to renew the lease as a tenancy from year to year for up to an additional five years. The lease also contained the following provision:

"It is further agreed that this lease shall be a part of agreement entered into today between the parties."

The proposed additional agreement related to the participation by the landlord in the net profits of the business. It recited that the premises had been leased to the tenant and that the landlord had made certain repairs and improvements to the premises. While a blank space was provided for the amount of such repairs, no figure had been inserted. In addition, there was a provision that the landlord would receive, each year, an unnamed percentage of the net profits. Again, a space was provided for the entry of the percentage of such profits, but no figure had been inserted. Since agreement had not been reached on the above items, the tenant did not sign the instrument and was never subsequently able to reach an agreement with the landlord there-

about. The proposed additional agreement was never signed by the tenant.

The notice of termination of the tenancy was given by the landlord on August 17, 1966, over thirty months after the tenant went into possession and after both parties had signed the written lease.

The tenant relies upon the written lease, signed and retained in possession of the attorney who represented both parties, as fixing the nature, term, and conditions of his occupancy of the premises. He further contends that the actions and conduct of the landlord now estop her from denying the lease or its terms as set forth therein. The landlord's position is that the lease, although signed by the parties, was ineffective because (1) it was never delivered and (2) it contained the provision that it was part of the additional or profit sharing agreement which was never executed. In other words, the basic contention of the landlord is that, because of the reference in the lease to the additional agreement, the instruments were made interdependent so that neither was effective without the execution of the other.

It is undisputed that the proposed additional or profit sharing agreement was never executed by the parties nor its basic terms agreed upon. It was therefore of no binding effect. Assuming however that the parties had agreed upon the general provisions contained therein, it would still be ineffective because the amount of the net profits to be shared with the landlord had not been agreed upon. Such was basic and material to the profit sharing agreement and could not be supplied by the court.

The questions then are whether there was any evidence to sustain the tenant's contention that the terms of the written lease constituted a separate, independent, binding agreement, the legal efficacy of which was not dependent on the execution or completion of the proposed profit sharing agreement; and whether, in any event, the landlord is now estopped to deny that the premises were leased to the tenant in accordance with the terms set forth in the written lease.

The question of whether the two instruments were so interdependent as to make the lease ineffective without the execution of the second depends upon the intention of the parties to be gathered from all of the facts and surrounding circumstances.

The mere fact that the lease contained a provision that it "shall be part of agreement entered into today between the parties" did not make its validity depend upon the execution of the proposed profit sharing instrument to which the lease admittedly referred. The provisions of the additional agreement were not made a part of the lease and there is nothing in the instruments to indicate that the sharing of profits was to be considered as a part of the rental required under the lease. In fact, the proposed profit sharing agreement recites that the premises had been leased to the tenant at a rental of $150.00 per month. The record supports an inference that the payment for the repairs and improvements to the property constituted a separate transaction from that of the lease and was, therefore, to be treated in a separate instrument.

Since there must be a new trial, we refrain from further review of the testimony. We are convinced however that the evidence was conflicting with reference to the material issues, and presented a jury question as to the nature of the tenancy under which the tenant occupied the premises, that is, whether from month to month or in accordance with the terms of the written lease signed by the parties.

Our conclusion that the inferences to be drawn from the testimony were for the jury to determine renders unnecessary a consideration of the question raised by the tenant that a directed verdict should have been entered in his favor.

The judgment of the lower court is accordingly reversed and the cause remanded for a new trial.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.